UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL WALKER,

                    Plaintiff,

          - against -

COMMISSIONER JOSEPH PONTE, Department of
Corrections, WARDEN OF OBCC LISA COOPER,
Otis Bantum Correction Center, OTIS BANTUM
CORRECTION CENTER, and CITY OF NEW YORK,

                    Defendants.

**OPINION AND ORDER**

14 Civ. 8507 (ER)

Ramos, D.J.:

      Michael Walker ("Plaintiff"), appearing *pro se*, brings this action pursuant to 42 U.S.C.

§ 1983, alleging that his constitutional rights were violated as a pretrial detainee in the Otis

Bantum Correctional Center ("Bantum").[1]  Plaintiff alleges that Commissioner Joseph Ponte

("Commissioner Ponte"), Warden Lisa Cooper ("Warden Cooper"), Bantum,[2] and the City of

New York (the "City," and collectively, "Defendants") violated Plaintiff's constitutional rights

by subjecting him to strip searches and by forcing him to pass through a radiation-emitting x-ray

screening machine.  Plaintiff seeks compensatory damages, punitive damages, injunctive relief,

and a declaratory judgment that Defendants' acts and omissions violated Plaintiff's constitutional

rights.  Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Plaintiff's Amended Complaint, Doc. 29, names Otis Bantum Correction Center as a defendant and as the site of
Plaintiff's alleged constitutional violations.  The Court assumes that Plaintiff is referring to the Otis Bantum
*Correctional* Center.

[2] Bantum is not listed as a defendant on the docket, but is listed as a defendant in Plaintiff's Amended Complaint,
Doc. 29.

**I. BACKGROUND**

The following facts are drawn from allegations contained in the Amended Complaint ("Am. Compl.") (Doc. 29), Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") (Doc. 44), and Plaintiff's Reply Affirmation ("Pl. Reply") (Doc. 46), which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a pro se plaintiff's opposition memoranda are consistent with the allegations contained in the Complaint, they may be read as supplements to the pleadings.") (citation omitted).

Plaintiff alleges that he was strip searched as a pretrial detainee at Bantum after "all movement outside of the facility." Am. Compl. ¶ 1. According to Plaintiff, strip searches upon entering the facility were conducted in front of three live cameras and in front of a holding cell "heavily occupied" by other inmates who were able to view the procedure. *Id.* Plaintiff states that there were dividers in the strip search area, but that the dividers were "absolutely useless," in that they did not prevent exposure to the cameras or other inmates. *Id.* In addition, strip searches were conducted in inmates' housing units during facility "shakedown[s]," though inmates were not in front of cameras or in the presence of other inmates during these searches. *Id.*

According to Plaintiff, the strip searches were "extremely humiliating," and placed him in a "compromising position for [verbal and/or physical] sexual aggression," which "violat[ed] [his] beliefs." *Id.* Plaintiff states that if he refused to comply with the strip search, he would be subjected to physical hostility and/or disciplinary action. *Id.* Plaintiff has submitted the

declarations of several other inmates at Bantum, each attesting to the same strip search procedures and the resulting humiliation they felt.[3]  Pl. Opp. at 14-17.

Plaintiff alleges that he was also subjected to body scans without protective gear by a RadPro SecurPass x-ray screening machine ("RadPro").  Am. Compl. ¶ 2.  Plaintiff alleges that there was a "continuous request" by Bantum correctional officers that Plaintiff pass through the RadPro and that there was "constant and frequent [radiation] exposure."  *Id.*; Pl. Opp. at 4-5, 9.  Plaintiff alleges that the amount of radiation emitted by the RadPro is 50 times more than the amount emitted by the machines used in airports, and that the radiation causes "threshold effects" which are immediate as well as "non-threshold" effects, which include cataract damage, genital sterilization, cancer, sickness, and vomiting.  Am. Compl. ¶ 2; Pl. Opp. at 5.  Plaintiff also states that the RadPro causes psychological injuries that "stem from the fear[] of physical complication[s]," as well as having to be naked in a room with more than five correctional officers, where female personnel would "walk by, peek in and speak while the searches [were] going on."  Am. Compl. ¶ 2; Pl. Opp. at 3-4.

In addition, Plaintiff feared that he would be at a greater risk to the harmful effects of radiation exposure due to open wounds he suffered from having been shot in the past.  Pl. Opp. at 3.  Plaintiff thus requested to speak with a supervisor prior to every scan due to this fear, but Bantum correctional officers refused to comply with those requests.  *Id.*  Plaintiff alleges that refusal to go through the RadPro would result in an infraction or a misbehavior report accompanied by a $25 fee and a blemish on his institutional record.  Am. Compl. ¶ 2; Pl. Opp. at 4.

---

[3] One of the declarations, submitted by Shawn Jones, includes additional allegations that Correctional Officers made "sexual remarks" during the strip search procedures, which were conducted in front of other individuals.  Pl. Opp. at 14.

Plaintiff alleges that the scans were conducted by correctional officers with no training in how to operate the machinery, and that Defendants did not keep a maintenance log of the RadPro.  Am. Compl. ¶ 2; Pl. Opp. at 2.  Plaintiff alleges that unspecified "defendants"[4] boasted that they didn't need training to use the RadPro, because they were correctional officers, and "[t]hat in itself is enough."  Pl. Opp. at 3.

Plaintiff recalls a particular incident where the officer using the RadPro believed that Plaintiff was carrying concealed razors, when in fact, the machine detected bullet fragments in Plaintiff's chest from a prior shooting.  Pl. Opp. at 3, 6, 11.  As a result, Plaintiff alleges that correctional officers dragged him off of a Department of Corrections bus, pulled his arms back while he was handcuffed, and grabbed him by the testicle.  Pl. Reply at 4.  Plaintiff has submitted a NYC Health Correctional Health Services Injury Report regarding the incident.  *Id.*  The Injury Report shows that Plaintiff had superficial cuts on his right knee, right ankle, and left wrist and that Plaintiff experienced left wrist discomfort, left elbow discomfort, and left testicle pain and swelling.[5]  *Id.*  According to Plaintiff, the correctional officers' mistaken belief that he was carrying razors subsequently led to him being placed in "solitary confinement" and in the "watch room" as punishment.  Pl. Opp. at 6.  Plaintiff describes this as a humiliating experience, in part because other inmates could watch him defecating.  *Id.* at 6, 11-12.  Plaintiff states that he sought treatment at the Mental Health Services Center in Brooklyn House of Detention and sought

---

[4] It is unclear who exactly Plaintiff is referring to, as none of the named defendants are correctional officers.

[5] While the Court could construe this as a 42 U.S.C. § 1983 excessive force claim, Plaintiff has failed to claim any specific allegations against the correctional officer(s) responsible for this incident.

Defendants argue that Plaintiff's claims about this incident are barred by the Statute of Limitations, because the event described occurred on April 15, 2008.  Defendants' Reply Memorandum of Law (Doc. 45) at 2-3.  However, Plaintiff provides documentation from the NYC Health Correctional Health Services indicating that the incident occurred on November 16, 2013.  Pl. Reply at 4.  In any event, Plaintiff cites this incident merely as an example of the correctional officers' lack of training.  Pl. Reply at 1-2.

medical services on numerous occasions as a result of this incident.  Pl. Opp. at 12; *see* Pl. Reply at 4.

Plaintiff alleges that Commissioner Ponte and Warden Cooper had the ability to change the scanning procedure in order to accommodate Plaintiff's and other inmates' concerns about radiation exposure, but chose not to, even though they knew that the RadPro posed a serious health risk to Plaintiff and other inmates.  Pl. Opp. at 9-10.  Further, Plaintiff alleges that in spite of Commissioner Ponte and Warden Cooper's knowledge of the health risks, they nevertheless designated untrained personnel to conduct the RadPro scans.  *Id.* at 8-10; Am. Compl. ¶ 2.

Plaintiff commenced this action on October 20, 2014.[6]  *See* Doc. 2.  Defendant filed a Motion to Dismiss on February 24, 2015.  Doc. 19.  Plaintiff was subsequently granted leave to file an Amended Complaint, which he filed on October 21, 2015.  Doc. 29.  Defendants filed their second Motion to Dismiss on January 11, 2016.  Doc. 37; *see also* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint ("Defs. Br.") (Doc. 39).

## II. LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all of the factual allegations from the complaint, and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint must adhere to Rule 8(a), which has been interpreted to require that it contain enough factual matter for the claim to be plausible on its face.  *Iqbal*, 556

---

[6] Plaintiff alleges that he exhausted all necessary grievance procedures prior to filling the Complaint.  Am. Compl. at 6.

U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] Complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

The same standard applies to motions to dismiss *pro se* complaints.  *See Mancuso v. Hynes*, 379 Fed. App'x 60, 61 (2d Cir. 2010).  However, the Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Jackson*, 709 F. Supp. 2d at 224 (quoting *Twombly*, 550 U.S. at 555).  A complaint that "tenders 'naked assertions' devoid of further factual enhancement" will not suffice.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and brackets omitted); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

6

When a pro se plaintiff's opposition memoranda raises new allegations that are "consistent with the allegations" in the Complaint, these allegations may be read as "supplements to th[e] pleadings." *Vail*, 68 F. Supp. 3d at 427 (citation omitted); *see also Boyer v. Channel 13, Inc.*, No. 04 Civ. 2137 (JSR) (FM), 2005 WL 2249782, at *3 (S.D.N.Y. Mar. 9, 2005) ("[A]lthough Rule 12(b)(6) generally restricts a court's consideration to the four corners of the complaint, pro se pleadings may be read together to determine whether a plaintiff conceivably could be entitled to relief.").

## III. DISCUSSION

### A. Strip Searches

#### 1. Unreasonable Search and Seizure

Plaintiff alleges that the repeated strip searches he was subjected to violated his constitutional right against unreasonable search and seizure under the Fourth Amendment. *See* Am. Compl. ¶ 4. Visual strip searches of pretrial detainees are permissible provided that the search is tied to "legitimate security interests," a determination that is "peculiarly within the province and professional expertise of correctional officers." *Florence v. Bd. of Chosen Freeholders*, 132 S. Ct. 1510, 1517 (2012). Thus, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.*

Plaintiff has not made any allegations indicating that Defendants have exaggerated their response to legitimate security interests. Indeed, the Supreme Court has held that visual strip searches of all detainees at intake or after contact visits, with or without reasonable suspicion, are reasonably related to legitimate security concerns. *Id.* at 1523; *Bell v. Wolfish*, 441 U.S. 520, 558-560 (1979). Thus, in spite of Plaintiff's claims to the contrary, suspicionless strip searches

may be conducted whenever a detainee enters the confines of a facility, as well as after every contact visit.  *See Florence*, 132 S. Ct. at 1515, 1523; *Bell*, 441 U.S. at 560.  Additionally, random strip searches may be conducted even in detainees' housing units.  *See Israel v. City of New York*, No. 11 Civ. 7726 (JMF), WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012); *see also Castro–Sanchez v. N.Y. State Dep't of Corr. Servs.*, No. 10 Civ. 8314 (DLC), 2011 WL 6057837, at *9 (S.D.N.Y. Dec. 6, 2011) ("Routine random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment.")

Plaintiff here alleges that the strip searches were "extremely humiliating" due to their very nature as well as the fact that they were conducted in front of cameras and other inmates. Am. Compl. ¶ 1.  However, courts have acknowledged the degree to which strip searches may humiliate and "invade the personal privacy of inmates," and have nonetheless upheld the use of strip searches where they further the legitimate interest of discovering contraband.  *See Bell*, 441 U.S. at 560; *Calhoun v. DeTella,* 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation.").  That the strip searches were carried out in front of cameras and other inmates does not counter this legitimate security interest.  *See Peek v. City of New York*, 13 Civ. 4488, 2014 WL 4160229 (AJN), at *2 (S.D.N.Y. Aug. 18, 2014) (upholding the constitutionality of the use of a camera during a strip search procedure); *Smith v. City of New York*, No. 14 Civ. 5934 (JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (same); *Israel*, WL 4762082, at *3 (finding that the presence of other inmates or correctional officers of both genders during strip searches did not violate plaintiff's Fourth Amendment rights).

Courts have found that the humiliation caused by strip searches may be sufficient to make out a claim when conducted intentionally to harass or embarrass the plaintiff. *See, e.g.*, *Hayes v. Marriott,* 70 F.3d 1144, 1148 n.5 (10th Cir. 1995) (remanding to develop record where plaintiff alleged that he was strip searched in front of over 100 people, including nonessential female staff, and that the defendants "allow[ed] unlimited, unmonitored viewing of the tapes"); *George v. City of New York*, No. 12 Civ. 6365 (PKC) (JLC), 2013 WL 5943206, at *10 (S.D.N.Y. Nov. 6, 2013) (plaintiffs alleged that they were strip searched "in order to make a spectacle of [the inmates] for the new recruits, for the sake of an example, and to humiliate and bring shame to the inmates.") (internal quotations omitted).  Here, however, Plaintiff makes no such allegations.

Consequently, Defendants' motion to dismiss the claim that the strip searches violated Plaintiff's Fourth Amendment rights is GRANTED.

### 2. Cruel and Unusual Punishment

Plaintiff also alleges that he feared sexual aggression from inmates who were able to witness him being strip searched, and that this resulted in a violation of his constitutional right against "cruel and unusual punishment." *See* Am. Compl. ¶ 1, 3-4.  Pretrial detainees' claims for cruel and unusual punishment fall under the Due Process Clause of the Fourteenth Amendment, as pretrial detainees "may not be 'punished' prior to an adjudication of guilt." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 312 (S.D.N.Y. 2014) (quoting *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009)).  However, the standards for showing a constitutional violation under the Due Process Clause of the Fourteenth Amendment and under the Eighth Amendment are identical. *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991) ("The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the

infliction of 'cruel and unusual punishments' on those convicted of crimes.") (internal citation omitted).

In order to show that a defendant acted with deliberate indifference to a plaintiff in violation of the Eighth Amendment, a plaintiff must satisfy an objective element "that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,'" as well as a subjective element "that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *See Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

With regard to the objective element, the "[n]ormal conditions of . . . confinement do not constitute an Eighth Amendment violation" and "[s]uch confinement is not abnormal unless it is 'without penological justification, grossly disproportionate, or involving the unnecessary and wanton infliction of pain.'" *Branch v. Goord*, No. 05 Civ. 6495 (WHP), 2006 WL 2807168, at *5 (S.D.N.Y. Sept. 28, 2006) (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)). Specifically, an Eighth Amendment claim based on strip search procedures will fail to meet the level of a "sufficiently serious" deprivation in the absence of "elements of sexual harassment, excessive force, or indeed any physical contact at all." *George*, 2013 WL 5943206, at *10.

Although Plaintiff suggests that the searches put him at risk for sexual assault by other inmates, Am. Compl. ¶ 1, this suggestion amounts to a purely speculative fear of sexual assault. While a physical injury is not required to show substantial risk of serious harm, "mere fear of an assault is insufficient to state a claim for an Eight Amendment violation." *Cooper v. City of New York*, 13 Civ. 7590 (PKC), 2014 WL 5315074, at *3 (S.D.N.Y. Oct. 17, 2014) (holding that the plaintiff's alleged "pain, suffering, extreme emotional distress, fear, and deprivation" did not

amount to any physical harm or specific threat in violation of the Eighth or Fourteenth Amendment); *see also Cruz v. Hillman*, No. 01 Civ. 4169 (DAB) (DCF), 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) (holding that plaintiff's experience of "much mental anguish and a great deal of suffering from worry and grief" was not objectively sufficiently serious to make an Eighth Amendment claim).

Alternatively, if an inmate faces threats from other inmates accompanied by "indication[s] that the threat will be carried out," the absence of an affirmative action by prison officials may permit a deliberate indifference claim and thus an Eighth or Fourteenth Amendment violation. *See Walker v. Shaw*, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010) (quoting *Green v. City of N.Y. Dep't of Corr.*, No. 06 Civ. 4978, 2008 WL 2485402, at *6-7 (S.D.N.Y. June 19, 2008)).  However, Plaintiff has not alleged that he reported any threats or indeed that he was ever threatened.  For these reasons, Defendants' motion to dismiss Plaintiff's claim of cruel and unusual punishment stemming from the strip searches at Bantum is GRANTED.

### B. RadPro Screenings

Plaintiff alleges that the use of RadPro caused a risk of future physical injury due to radiation exposure.  Plaintiff argues that this risk of future injury constitutes cruel and unusual punishment in violation of the Fourteenth Amendment.  Am. Compl. ¶ 2.  Defendants argue that the minimal amount of radiation emitted by the RadPro could not possibly cause harm to Plaintiff unless Plaintiff was exposed to a minimum of 400 scans annually, which Plaintiff has not alleged.  Defs. Br. at 16.

Although Plaintiff does not allege a current physical injury, a claim based on the possibility of risk to his future health may satisfy a deliberate indifference claim.  *See Helling v.*

*McKinney*, 509 U.S. 25, 25 (1993) ("An injunction cannot be denied to inmates who plainly prove an unsafe, life-threatening condition on the ground that nothing yet has happened to them."); *see also Middleton v. City of New York (In re RadPro SecurPass Scanner Cases)*, No. 13 Civ. 6095 (CS), 2014 WL 4054310, at *7 (S.D.N.Y. Aug. 13, 2014) ("Where a plaintiff plausibly alleges that prison officials acted with deliberate indifference to a substantial risk of serious harm posed by involuntary exposure to an unsafe condition, the inmate need not have suffered actual injury to state a constitutional violation.").

This case is the latest to be brought in the past several years alleging that the use of the RadPro subjects inmates to constitutionally prohibited punishment. *Rahman v. Schriro*, is instructive here.  In *Rahman*, the district court evaluated a deliberate indifference claim based on radiation from a RadPro.  *See* 22 F. Supp. 3d at 314.  The court found that the plaintiff's allegation that he was exposed to radiation from a RadPro twice a day was sufficient to satisfy the objectively serious and unsafe prong on a motion to dismiss.  *See id.*

However, the frequency of screenings is material to a claim of future injury as a result of radiation exposure from RadPro screenings.  *See id.* (holding that the plaintiff's allegations of being scanned at least twice daily could amount to serious future injury to be determined through discovery); *see also Middleton*, 2014 WL 4054310, at *7 (holding that 5-10 RadPro screenings did not put plaintiff at risk).  Thus, courts have held that the number of screenings that a pretrial detainee undergoes is a material element of a claim for future injury, and in turn a claim for deliberate indifference.  Here, Plaintiff alleges that his exposure to radiation from the RadPro was "constant and frequent," and that the request to pass through the machines was "continuous."  Pl. Opp. at 5, 9.  The Court finds that these allegations lead to the plausible

inference that Plaintiff was subjected to a high number of screenings which could lead to future injury.  Thus, Plaintiff's allegations satisfy the objective prong of the analysis.  Pl. Opp. at 9.

Plaintiff must show that Commissioner Ponte and Warden Cooper were aware of and disregarded "an excessive risk to [Plaintiff's] health or safety."  *Farmer*, 511 U.S. at 834 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").  Here, Plaintiff alleges that Commissioner Ponte and Warden Cooper were aware of the health risks associated with radiation exposure. Pl. Opp. at 8-9.  Plaintiff also alleges that Commissioner Ponte and Warden Cooper were responsible for the use of the RadPro, as both had the ability to authorize alternative screening procedures, and that they both designated untrained correctional officers to operate the machines.  Pl. Opp. at 8-9.

Commissioner Ponte and Warden Cooper's alleged awareness of the harmful effects of radiation exposure, their appointment of untrained correctional officials to operate the machines, and their decision not to change the scanning policy despite Plaintiff's complaints are sufficient to show that Commissioner Ponte and Warden Cooper drew the inference that Plaintiff's safety was at risk.  Pl. Opp. at 9.  Accordingly, Plaintiff satisfies the subjective prong of his deliberate indifference claim.

### C. Qualified Immunity

Defendants argue that even if Plaintiff's rights were violated, Commissioner Ponte and Warden Cooper are nevertheless entitled to qualified immunity.  *See* Defs. Br. at 19-20.  A government official sued in his individual capacity is entitled to qualified immunity:

> (1) if the conduct attributed to him was not prohibited by federal
> law; or (2) where that conduct was so prohibited, if the plaintiffs
> right not to be subjected to such conduct by the defendant was not
> clearly established at the time it occurred; or (3) if the defendant's

> action was "objective[ly] legal[ly] reasonable[ ] . . . in light of the
> legal rules that were clearly established at the time it was taken."

*Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir. 2002) (alterations in original)

(citations omitted) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)).

The Supreme Court has explained that, "[t]o be clearly established, a right must be

sufficiently clear 'that every reasonable official would [have understood] that what he is doing

violates that right.'" *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (second alteration in

original) (quoting *Anderson*, 483 U.S. at 640). Although a case directly on point is not required,

"existing precedent must have placed the statutory or constitutional question beyond debate."

*Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012) (internal citation omitted). Further,

"[e]ven if the right at issue was clearly established in certain respects . . . an officer is still

entitled to qualified immunity if 'officers of reasonable competence could disagree' on the

legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154

(2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff alleges that Commissioner Ponte and Warden Cooper were responsible for

implementing Bantum's body scanning procedures and were aware of the health risks due to

radiation exposure. Personal-capacity suits "seek to impose individual liability upon a

government officer for actions taken under color of state law." *Hafer v. Melo,* 502 U.S. 21, 25

(1991). Such suits must be premised on a certain level of personal involvement. *See Wright v.*

*Smith,* 21 F.3d 496, 501 (2d Cir.1994) ("It is well settled in this Circuit that 'personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.

1991)). "An individual cannot be held liable for damages under § 1983 'merely because he held

a high position of authority,' but can be held liable if he was personally involved in the alleged

deprivation." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir.

2004) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).

A plaintiff can prove personal involvement with evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference . . . by failing to act on
> information indicating that unconstitutional acts were occurring.

*Id.* (citation omitted); *see also Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir. 2013).

Additionally, "[w]hile the plaintiff in a personal-capacity suit need not establish a connection to

governmental 'policy or custom,' officials sued in their personal capacities, unlike those sued in

their official capacities, may assert personal immunity defenses . . . ." *Hafer,* 502 U.S. at 25.

Here, it is clear that Plaintiff has sufficiently alleged Commissioner Ponte and Warden

Cooper's personal involvement, in that Commissioner Ponte and Warden Cooper "allowed the

continuance" of a "policy or custom under which unconstitutional practices occurred." *Back*,

365 F.3d at 127; Pl. Opp. at 8-9.  To that end, neither Commissioner Ponte nor Warden Cooper

are entitled to qualified immunity at this juncture, and are thus properly named by Plaintiff.

### D. Municipal Liability and Bantum

Plaintiff names the City of New York as a municipality liable for the alleged

constitutional violations.  However, a municipality cannot be held liable under Section 1983 for

the acts of its employees solely on a theory of *respondent superior.  Monell v. Dep't of Soc.

Servs. of City of New York*, 436 U.S. 658, 691 (1978).  A Section 1983 claim against a

municipality can only be sustained if the alleged unconstitutional action was the result of an

official policy or custom. *Id.* at 694. However, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, under Second Circuit case law, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor. *Id.* Thus, if a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Id.*

For the reasons set forth *supra*, the Court finds that Plaintiff has alleged an underlying constitutional violation by state actors – Commissioner Ponte and Warden Cooper – who were carrying out a policy sanctioned by the City. Defendants' motion to dismiss Plaintiff's surviving § 1983 claim against the City is therefore DENIED.

The Court also notes that because Bantum is merely an administrative arm of the City, it lacks the capacity to be sued in this action, and shall be dismissed from this case. *See, e.g.*, *S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007); *Manning v. Cty. of Westchester*, No. 93 Civ. 3366 (VLB), 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995).

### E. Prison Litigation Reform Act Bar against Mental and Emotional Damages

Plaintiff alleges emotional injuries, as well as possible future physical injuries. Pl. Opp. at 8. Defendant argues that because Plaintiff suffers no current physical injury, the Prison Litigation and Reform Act ("PLRA") bars any recovery in this case. *See* Defs. Br. at 17. The Prison Litigation Reform Act ("PLRA") provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. §

1997e(e); *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) ("[A] plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.").  Therefore, a court may dismiss a complaint that seeks compensatory damages "solely for an emotional injury without any claim of physical injury."  *See id.* at 419. However, if a prisoner alleges an increased risk of future health problems caused by radiation exposure, then the prisoner is essentially alleging a future physical injury and is not barred by the PLRA from seeking damages for mental or emotional injuries resulting therefrom.  *See Rahman*, 22 F. Supp. 3d. at 318 ("Section 1997e(e) . . . does not limit [a] [p]laintiff's ability to recover compensatory damages for a serious risk of future physical harm.").

Plaintiff here has made a sufficient showing of possible future injury based on his allegations of "constant and frequent" exposure to radiation.  *See Frieson v. City of New York*, No. 11 Civ. 4611 (JGK), 2012 WL 1948782, at *2 (S.D.N.Y. May 30, 2012) ("[A]t the motion to dismiss stage, the Court cannot, and need not, conclusively resolve the factual question of whether or not the plaintiff suffered physical injury in addition to his claimed mental and emotional injury."); *see also Rahman*, 22 F. Supp. 3d. at 318 (same); Pl. Opp. at 9.  Therefore, Plaintiff's claim is not barred under the PLRA at this stage.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Court:

- GRANTS Defendants' motion to dismiss Plaintiff's Fourth Amendment claim of illegal search and seizure resulting from the strip searches;

- GRANTS Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim of cruel and unusual punishment resulting from the strip searches; and

- DENIES Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claim of cruel and unusual punishment resulting from the use of the RadPro x-ray scanning machine.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 37, and to dismiss Bantum from this action.  The parties are directed to appear for a status conference on August 31, 2016 at 10:00 AM.

It is SO ORDERED.


Dated:     August 18, 2016
           New York, New York

                                        Edgardo Ramos, U.S.D.J.